SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Morristown Associates v. Grant Oil Co.** (A-38-13) (073248)

**Argued October 6, 2014 -- Decided January 26, 2015**

**LaVECCHIA, J., writing for a unanimous Court.**

The issue in this appeal is whether the general six-year statute of limitations contained in N.J.S.A. 2A:14-1 applies to private claims for contribution made pursuant to the New Jersey Spill Compensation and Control Act (Spill Act), N.J.S.A. 58:10-23.11f(a)(2)(a).

In 1979, plaintiff, Morristown Associates, purchased commercial property located in Morristown, New Jersey. The property contained a strip-mall-style shopping center known as Morristown Plaza. Among the tenants of Morristown Plaza was Plaza Cleaners, a dry cleaning business owned at the time by Robert Herring (Herring). Herring and his wife had entered into a lease with the property's previous owner, Morris Center Associates, in 1976. Due to construction, Herring was unable to occupy and operate Plaza Cleaners until approximately January 1, 1978. At some point before moving in, Herring installed a steam boiler in a room at the rear of the leased space and an underground storage tank (UST) for fuel to operate the boiler. In 1985, Herring sold Plaza Cleaners to defendants Edward and Amy Hsi (collectively the Hsis). The Hsis owned the business until 1998 when it was sold to current owner and third-party defendant, Byung Lee (Lee). In August 2003, a monitoring of a well installed near Plaza Cleaner's UST revealed fuel oil contamination. A subsequent investigation revealed that although the UST was intact, the fill and vent pipes were "severely deteriorated, with large holes along a significant portion of their lengths." Plaintiff's experts concluded that those holes had developed as early as 1988 and, since that time, oil had been leaking from the pipes each time the tank was filled. Each of the named oil company defendants in this case allegedly supplied fuel oil to Plaza Cleaners at various times between 1988 and 2003.

Plaintiff took steps to remediate and clean up the contamination. On July 31, 2006, plaintiff filed an initial three-count complaint naming as a defendant Grant Oil Company. Count one of the complaint asserted a claim under the Spill Act, seeking contribution for costs related to the cleanup and removal of the fuel oil. Between October 2007 and July 2009, plaintiff filed three amended complaints, adding as defendants the Hsis and other heating oil companies. Lee and Multi Cleaners, Inc., doing business as Plaza Cleaners, were brought into the action as third-party defendants. In response to a series of motions, the trial court granted summary judgment in favor of defendants on various claims against them. In particular, the trial court held that the general six-year statute of limitations for injury to real property, N.J.S.A. 2A:14-1, applied to private claims for contribution pursuant to the Spill Act and, as such, claims against defendants for damage that had occurred more than six years before that defendant was brought into the case were time-barred.

On appeal, plaintiff argued, in part, that its claims were not untimely because the six-year statute of limitations contained in N.J.S.A. 2A:14-1 does not apply to Spill Act contribution claims. The Appellate Division rejected that argument and affirmed the trial court's judgment in a published decision. 432 N.J. Super. 287 (App. Div. 2013). In its reasoning, the appellate panel cited case law, including decisions from this Court, that had found general statutes of limitations applicable when particular statutes did not set forth a specific limitation period. Because of its holding on the statute of limitations issue, the panel determined that it need not address any other issues raised by the parties.

Plaintiff filed a petition for certification to this Court that focused on whether the general six-year statute of limitations applied to contribution claims under the Spill Act. The Court granted certification. 216 N.J. 365 (2013).

**HELD:** The general six-year statute of limitations contained in N.J.S.A. 2A:14-1 does not apply to private claims for contribution made pursuant to the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11f(a)(2)(a).

1

1.  As originally enacted, the Spill Act contemplated that most cleanup actions would be conducted by the Department of Environmental Protection (DEP) using monies from the New Jersey Spill Compensation Fund (Spill Fund) where needed.  See L. 1976, c. 141, § 7.  The Spill Act scheme made "[t]he fund . . . strictly liable, without regard to fault, for all cleanup and removal costs and for all direct and indirect damages no matter by whom sustained."  Id. § 8(a).  In addition, the Spill Fund could recover damages up to certain limits subject only "to the defenses enumerated in subsection [(d)] of this section."  Id. § 8(b).  Owners and operators of major facilities or vessels could only raise as defenses "[a]n act or omission caused solely by war, sabotage, governmental negligence, God, or a third party or a combination thereof."  Id. § 8(d).  "Any other person" could raise "any defense authorized by common or statutory law."  Ibid.  In 1979, the Spill Act was revised.  Subsection (d) was revised to provide that "[a]n act or omission caused solely by war, sabotage, or God, or a combination thereof, shall be the only defenses which may be raised by any owner or operator of a major facility or vessel responsible for a discharge in any action arising under the provisions of this act."  L. 1979, c. 346, § 5(d).  In 1991, subsection (c) of the liability section was amended to read, in relevant part:  "Any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred."  L. 1991, c. 85, § 4 (emphasis added).  (pp. 19-24)

2.  Based on the Spill Act's development of joint and several strict liability, any responsible party, even if only partially responsible, can be required to pay the entire cost of a cleanup.  As a result, remediation actions are now often undertaken by private parties acting through an agreement with DEP.  The Legislature amended the Spill Act in 1991 expressly to "allow[] those parties who enter into an agreement with [DEP] to remove a hazardous discharge to seek contribution from those responsible parties who have not entered into such an agreement."  Assemb. 3659 (Sponsor's Statement), 204th Leg. (1991).  The contribution provision of the Spill Act cross references N.J.S.A. 58:10-23.11g(c) ("Any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs.") and N.J.S.A. 58:10-23.11g(d) ("An act or omission caused solely by war, sabotage, or God, or a combination thereof, shall be the only defenses which may be raised by any owner or operator of a major facility or vessel responsible for a discharge.").  (pp. 25-27)

3.  The Spill Act provides a right of contribution for "dischargers or persons [who] clean[] up and remove[] a discharge of a hazardous substance" against "all other dischargers and persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal."  N.J.S.A. 58:10-23.11f(a)(2)(a).  Neither this provision, nor any other provision in the Spill Act, sets forth a statute of limitations applicable to such contribution actions or states that a statute of limitations is not applicable.  However, while the contribution provision does not explicitly state that no statute of limitations applies, it does state that "[a] contribution defendant shall have only the defenses to liability available to parties pursuant to [N.J.S.A. 58:10-23.11g(d)]."  N.J.S.A. 58:10-23.11f(a)(2)(a) (emphasis added).  The Spill Act's incorporation of the defenses enumerated in N.J.S.A. 58:10-23.11g(d) limits defendants to the following defenses:  "an act or omission caused solely by war, sabotage, or God, or a combination thereof."  The Spill Act enumerates the only defenses specified as available to contribution defendants and a statute of limitations defense is not included.  The Legislature could not have intended to permit its imposition of contribution liability on culpable dischargers to be frustrated by the imposition of a general and prior enacted, but unreferenced, statute of limitations.  By giving effect to the words of the Legislature, the Court does not unsettle a decades-long understanding in this State that no limitations period restricts contribution claims against responsible parties.  (pp. 27-34)

The judgment of the Appellate Division is **REVERSED** and the matter **REMANDED** for consideration of the unaddressed issues raised on appeal.

**CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion.**

MORRISTOWN ASSOCIATES,

    Plaintiff-Appellant,

        v.

GRANT OIL COMPANY, ABLE
ENERGY, PARSIPPANY FUEL OIL,
EDWARD HSI and AMY HSI and
SPARTAN OIL COMPANY,

    Defendants-Respondents,

        and

PETRO INC., JOHNSON OIL
COMPANY, MEENAN OIL COMPANY
d/b/a REGIONAL OIL COMPANY,

    Defendants-Respondents,

        and

GRANT OIL COMPANY, ABLE
ENERGY, INC., PARSIPPANY FUEL
OIL CO., and PETRO INC.,

    Defendants/Third Party
    Plaintiffs,

        v.

BYUNG LEE and MULTI CLEANERS,
INC., d/b/a PLAZA CLEANERS,
EDWARD HSI and AMY HSI,
JOHNSON OIL COMPANY, MEENAN
OIL COMPANY d/b/a REGION OIL
as successor in interest to
Johnson Oil Company and
SPARTAN OIL COMPANY,

    Third-Party Defendants.

1

Argued October 6, 2014 – Decided January 26, 2015

On certification to the Superior Court, Appellate Division, whose opinion is reported at 432 N.J. Super. 287 (2013).

Steven T. Singer argued the cause for appellant.

David W. Field argued the cause for respondents Edward and Amy Hsi (Lowenstein Sandler, attorneys).

Kristin V. Hayes argued the cause for respondent Spartan Oil Company (Wiley Malehorn Sirota & Raynes, attorneys; Ms. Hayes and Carolyn C. Duff, on the briefs).

Joseph M. Gaul, Jr., argued the cause for respondents Petro, Inc., Johnson Oil Company, and Meenan Oil Company, d/b/a Region Oil Company (Gaul, Baratta & Rosello, attorneys; Mr. Gaul, Lawrence F. Rosello, and Jay T. Weatherston, on the briefs).

Edward Lloyd argued the cause for amici curiae Ironbound Community Corporation, The Association of New Jersey Environmental Commissions, NY/NJ Baykeeper, Environment New Jersey, The Delaware Riverkeeper Network and The New Jersey Work Environment Council (Morningside Heights Legal Services, attorneys; Susan J. Kraham, on the brief).

A. Paul Stofa, Deputy Attorney General, argued the cause for amicus curiae New Jersey Department of Environmental Protection (John J. Hoffman, Acting Attorney General of New Jersey, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Mark S. Heinzelmann, Deputy Attorney General, on the brief).

Craig S. Provorny argued the cause for amicus curiae New Jersey State Bar Association (Paris P. Eliades, President, attorney; Ralph J. Lamparello, of counsel; Mr. Provorny and Laurie J. Sands, on the brief).

Janine G. Bauer submitted a brief on behalf of amici curiae Richard Catena, Richard Catena Auto Wholesalers, Inc., A&S Russo Real Estate, LLC, Tiffany's Bodily Divine Salon, and Spa, Inc. (Szaferman, Lakind, Blumstein & Blader, attorneys).

Stuart J. Lieberman submitted a brief on behalf of amicus curiae Passaic River Coalition (Lieberman & Blecher, attorneys; Mr. Lieberman, Michael G. Sinkevich, and Shawn M. LaTourette, on the brief).

Edward W. Purcell, Associate Counsel, submitted a brief on behalf of amici curiae New Jersey State League of Municipalities and New Jersey Institute of Local Government Attorneys (William J. Kearns, Jr., General Counsel, attorney).

JUSTICE LaVECCHIA delivered the opinion of the Court.

We granted certification in this matter to determine whether the general six-year statute of limitations contained in N.J.S.A. 2A:14-1 applies to private claims for contribution made pursuant to the New Jersey Spill Compensation and Control Act (Spill Act), N.J.S.A. 58:10-23.11f(a)(2)(a).  Based on the plain language of the Spill Act, reinforced by its legislative history, we hold that N.J.S.A. 2A:14-1's six-year statute of limitations is not applicable to Spill Act contribution claims. We therefore reject the contrary determination of the Appellate

3

Division and reverse and remand this matter to the Appellate Division for its consideration of other issues raised on appeal that were unaddressed.

## I.

### A.

When enacted in 1976, L. 1976, c. 141, the Spill Act constituted "a pioneering effort by government to provide monies for a swift and sure response to environmental contamination." Marsh v. N.J. Dep't of Envtl. Prot., 152 N.J. 137, 144 (1997). Passed initially as a response to concerns about the potential for off-shore oil spills, the Spill Act soon was amended to address a wider range of toxic pollution concerns. See generally Buonviaggio v. Hillsborough Twp. Comm., 122 N.J. 5, 7, 9-10 (1991) (discussing amendments to Spill Act adopted through enactment of L. 1979, c. 346). Importantly, the Spill Act now "prohibits the discharge of hazardous substances," "provides for the cleanup of that discharge," and imposes joint and several liability on the responsible parties. See Magic Petroleum Corp. v. Exxon Mobil Corp., 218 N.J. 390, 401-02 (2014) (internal quotation marks omitted). As of 1991, the Spill Act also permits those who clean up a contaminated site to seek contribution from other liable parties. N.J.S.A. 58:10-23.11f(a)(2)(a); L. 1991, c. 372. This case concerns the application of a statute of limitations to that contribution

4

provision.  The provision on which we are focused provides:

> Whenever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance.  In an action for contribution, the contribution plaintiffs need prove only that a discharge occurred for which the contribution defendant or defendants are liable pursuant to [N.J.S.A. 58:10-23.11g(c)], and the contribution defendant shall have only the defenses to liability available to parties pursuant to [N.J.S.A. 58:10-23.11g(d)].  In resolving contribution claims, a court may allocate the costs of cleanup and removal among liable parties using such equitable factors as the court determines are appropriate.
>
> [N.J.S.A. 58:10-23.11f(a)(2)(a) (emphasis added).]

The incorporated section, N.J.S.A. 58:10-23.11g(d), does not contain a statute of limitations defense.  To provide background to the present question of statutory interpretation, a brief summary of the three decades of history to this case follows.

B.

In 1979, plaintiff, Morristown Associates, purchased commercial property located at 30 Lafayette Avenue in Morristown, New Jersey.  The property contained a strip-mall-style shopping center known as Morristown Plaza.  Among the tenants of Morristown Plaza was Plaza Cleaners, a dry cleaning

5

business owned at the time by Robert Herring (Herring). Herring and his wife had entered into a lease with the property's previous owner, Morris Center Associates, in 1976. Due to construction, Herring was unable to occupy and operate Plaza Cleaners until approximately January 1, 1978. At some point before the move-in date, Herring installed a steam boiler in a room at the rear of the leased space and an underground storage tank (UST) beneath the concrete floor of that room; the UST held fuel oil needed to operate the boiler. The boiler and UST were installed to generate the heat and steam required for the dry cleaning process. Fill and vent lines for the UST protruded through an exterior wall of the building into an alleyway.

In 1985, Herring sold Plaza Cleaners to defendants Edward and Amy Hsi (collectively the Hsis). The Hsis owned the business until 1998 when it was sold to current owner and third-party defendant, Byung Lee (Lee). The original boiler remained in operation from the time the business opened in 1978 until approximately November 2003; Lee later replaced it with a natural-gas-fired boiler.

In 1993, as part of a proposed refinancing, plaintiff hired Giorgio Engineering, P.C., to perform an environmental audit of the Morristown Plaza property. Giorgio Engineering incorrectly reported that there were no USTs on the site. In 1999, an UST that served a ShopRite grocery store in Morristown Plaza leaked.

6

It was removed under the supervision of Morristown Plaza's then property manager, Ekstein Asset Management.[1]  Although Ekstein Asset Management and the Department of Environmental Protection (DEP) entered into a memorandum of agreement in respect of that incident, Ekstein Asset Management failed to comply with DEP's remedial process; notwithstanding, DEP terminated the memorandum of agreement on November 1, 2000.

Importantly, in August 2003, a monitoring of a well installed near Plaza Cleaners's UST revealed fuel oil contamination.  Plaintiff was informed that the UST used by Plaza Cleaners might be the source.  A subsequent investigation revealed that although the UST was intact, the fill and vent pipes were "severely deteriorated, with large holes along a significant portion of their lengths."  Plaintiff's experts concluded that those holes had developed as early as 1988 and, since that time, oil had been leaking from the pipes each time the tank was filled.  Each of the named oil company defendants allegedly supplied fuel oil to Plaza Cleaners at various times between 1988 and 2003.  Those companies delivered varying quantities of oil on a more or less monthly basis, filling the

---

[1] Prior to 1995, the property was managed by Fidelity Management. Ekstein Asset Management took over the role until 2002 when it was returned to Fidelity Management.

UST from tanker trucks by means of the fill pipe located in the alley wall.

Plaintiff took steps to remediate and clean up the contamination and pursued a contribution claim against other allegedly responsible parties. In its action, plaintiff contends that, before 2003, it was unaware that any UST existed on the property.

C.

On July 31, 2006, plaintiff filed an initial three-count complaint naming as a defendant Grant Oil Company (Grant Oil). Count one of the complaint asserted a claim under the Spill Act, N.J.S.A. 58:10-23.11 to -23.11z, seeking contribution for costs related to the cleanup and removal of the fuel oil.

Between October 2007 and July 2009, plaintiff filed three amended complaints, adding as defendants the Hsis and other heating oil companies -- Able Energy, Parsippany Fuel Oil Company (Parsippany Fuel), Petro Incorporated (Petro), Johnson Oil Company (Johnson Oil), Meenan Oil Company (Meenan Oil) doing business as Region Oil Company (Region Oil) as successor in interest to Johnson Oil, and Spartan Oil Company (Spartan Oil).[2] The heating oil companies filed answers, third-party complaints,

_____

[2] Prior to December 15, 1993, Region Oil was owned and operated by Spartan Oil. Spartan Oil sold the assets of Region Oil to Meenan Oil on that date.

cross-claims, and counter-claims.  Lee and Multi Cleaners, Inc., doing business as Plaza Cleaners, were brought into the action as third-party defendants.

Meanwhile, the parties engaged in extensive discovery.  In response to a series of motions, the trial court entered orders barring proposed testimony by Robert Walters, plaintiff's oil delivery expert, and granting summary judgment in favor of defendants on various claims against them.  In particular, in respect of the summary judgment motions, the trial court held that the general six-year statute of limitations for injury to real property, N.J.S.A. 2A:14-1, applied to private claims for contribution pursuant to the Spill Act and, as such, claims against defendants for damage that had occurred more than six years before that defendant was brought into the case were time-barred.  Further, after conducting a hearing pursuant to Lopez v. Swyer, 62 N.J. 267 (1973),[3] the trial court held that plaintiff did not get the benefit of the Lopez discovery rule because plaintiff should have discovered its claims when the other leaking UST was found in 1999 on the ShopRite property.

---

[3] At a Lopez hearing, a plaintiff whose claims are otherwise subject to a statute of limitations may seek application of the discovery rule, which prevents application of the statutory bar if "a reasonable person in her circumstances would not have been aware within the prescribed statutory period that she was injured through the fault of another."  Kendall v. Hoffman-La Roche, Inc., 209 N.J. 173, 194 (2012).

Accordingly, the court granted motions for summary judgment by Spartan Oil, Petro, Johnson Oil, Meenan Oil doing business as Region Oil, and the Hsis on statute of limitations grounds. Able Energy's motion for summary judgment was granted in part and denied in part; the claims for damages based on deliveries occurring in 2001 and 2002 were allowed to proceed. Grant Oil's and Parsippany Fuel's motions for summary judgment were denied.

Following stipulations by the parties and the trial court's dismissal of the remaining claims, the trial court's orders became appealable as of right. See R. 2:2-3(a). On appeal to the Appellate Division, plaintiff raised four alleged trial court errors, one of which is relevant to this appeal. Plaintiff contended that its claims were not untimely because the six-year statute of limitations contained in N.J.S.A. 2A:14-1 does not apply to Spill Act contribution claims. The Appellate Division rejected that argument and affirmed the trial court's judgment in a published decision.

In doing so, the panel acknowledged Pitney Bowes, Inc. v. Baker Industries, Inc., 277 N.J. Super. 484 (App. Div. 1994), in which the Appellate Division held that N.J.S.A. 2A:14-1.1's ten-year statute of repose did not apply to bar a contribution action under the Spill Act, and that that reasoning had been applied in a 1999 unpublished decision to find a statute of limitations defense inapplicable to Spill Act contribution

claims.  However, the panel found that <u>Pitney Bowes</u> was not controlling, distinguishing statutes of repose from statutes of limitations.  In its reasoning, the panel cited case law, including decisions from this Court, that had found general statutes of limitations applicable when particular statutes did not set forth a specific limitation period.  The panel also noted that decisions of the United States District Court for the District of New Jersey had held that <u>N.J.S.A.</u> 2A:14-1's six-year statute of limitations was applicable to Spill Act claims, and it observed that applying a statute of limitations to the Spill Act would be consistent with the approach taken in claims brought under the federal Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 <u>U.S.C.A.</u> §§ 9601-9675.

Accordingly, the panel affirmed the trial court's application of the discovery rule based on the facts developed at the <u>Lopez</u> hearing.  Because of its holding on the statute of limitations issue, the panel determined that it need not address any other issues raised by the parties.

Plaintiff filed a petition for certification to this Court that focused on whether the general six-year statute of limitations applied to contribution claims under the Spill Act. We granted certification.  216 <u>N.J.</u> 365 (2013).  We also granted amicus curiae status to the Innocent Landowners Group (Innocent

Landowners); Ironbound Community Corporation, The Association of New Jersey Environmental Commissions, NY/NJ Baykeeper, Environment New Jersey, The Delaware Riverkeeper Network, and The New Jersey Work Environment Council (collectively Environmental Amici); New Jersey Department of Environmental Protection (DEP); New Jersey State Bar Association (NJSBA); New Jersey State League of Municipalities and New Jersey Institute of Local Government Attorneys (collectively Municipal Amici); and Passaic River Coalition (PRC).

II.

A.

Plaintiff argues that the Appellate Division erred in holding that N.J.S.A. 2A:14-1's six-year statute of limitations applies to Spill Act claims. Plaintiff points out that the Spill Act itself contains no statute of limitations on filing contribution claims and maintains that there is no "hard and fast rule" requiring the application of a statute of limitations when a statute is silent. Plaintiff contends that arguments to the contrary are based on a mistaken interpretation of Montells v. Haynes, 133 N.J. 282 (1993), in which this Court concluded that a general statute of limitations should apply to Law Against Discrimination (LAD) claims where the LAD was silent on the subject.

Plaintiff emphasizes that the section giving rise to a

12

contribution claim, N.J.S.A. 58:10-23.11f(a)(2)(a), expressly provides that the only defenses available to a defendant in a contribution action are those prescribed in N.J.S.A 58:10-23.11g(d). That cross-referenced section does not include a statute of limitations defense.

Plaintiff also notes that the Legislature failed to include a statute of limitations when it amended the Spill Act in 1991 to permit contribution claims, contrasting that omission with the Legislature's explicit inclusion of a statute of limitations elsewhere in the Spill Act. Specifically, plaintiff points to N.J.S.A. 58:10-23.11k, which mandates that claims with the New Jersey Spill Compensation Fund (Spill Fund) be made within one year of the discovery of damage. According to plaintiff, that specific inclusion of a statute of limitations evidences a legislative intent to encourage the voluntary remediation of contaminated sites and the filing of contribution actions.

Plaintiff also asserts that the Appellate Division's decision conflicts with an earlier, but well-known, unpublished Appellate Division decision that found N.J.S.A. 2A:14-1's statute of limitations was inapplicable to the Spill Act, an approach adopted in Pitney Bowes, supra. 277 N.J. Super. at 489-90 (holding statute of repose would not bar Spill Act claim). Plaintiff argues that the Legislature's failure to add a statute of limitations defense to the statute, despite

amending it multiple times after those decisions, should be understood as legislative agreement with those decisions.

From a policy perspective, plaintiff argues that imposing a six-year statute of limitations would not encourage the speedy remediation of contribution claims because environmental remediation efforts can take long periods of time. Additionally, plaintiff argues that the Spill Act has been consistently given an expansive interpretation in order to effectuate its purposes, and points to N.J.S.A. 58:10-23.11x, which provides that the Spill Act "shall be liberally construed."

### B.

All defendants argue that the Appellate Division correctly held that a six-year statute of limitations applies to plaintiff's Spill Act claims. The arguments are largely consistent with one another and, accordingly, defendants' arguments are summarized generally below.

Relying on an argument premised on Montells, supra, defendants argue that, in the absence of an explicit statute of limitations, the court should apply the limitations period for actions seeking comparable relief at common law, focusing on the nature of the injury, not the legal theory of the individual claim. Because the injury to plaintiff is damage to real property, defendants assert that N.J.S.A. 2A:14-1 governs.

14

Defendants highlight the language of N.J.S.A. 2A:14-1 that states that it should be applied in "[e]very action at law" for injury to real property. Presumably, defendants argue, the Legislature was aware of this general statute of limitations when it enacted the Spill Act. Thus, the Legislature's failure to expressly prohibit a statute of limitations supports the application of the limit established in N.J.S.A. 2A:14-1. As additional support, defendants cite a number of federal court decisions for the District of New Jersey that apply New Jersey law and conclude that the general six-year statute of limitations applies to Spill Act claims.

Defendants argue that plaintiff misreads N.J.S.A. 58:10-23.11g(d)'s limitation of available defenses. Defendants contend that plaintiff takes out of context the phrase that identifies defenses, namely the language that reads, "an act . . . caused solely by war, sabotage, or God . . . shall be the only defenses which may be raised." Defendants note that the section later references owners or operators of major facilities or vessels and argue that the provision serves to limit defenses available to defendants that meet that criteria. Defendants further argue that the Spill Act's list of available defenses should not be read to exclude all other defenses because a defendant presumably maintains other unlisted, procedural defenses.

15

Defendants assert that plaintiff's reliance on Pitney Bowes and related non-precedential case law is misplaced. Defendants highlight that Pitney Bowes dealt with a statute of repose, not a statute of limitations.

Finally, as a matter of policy, defendants argue that imposing a limit will encourage prompt investigation of contamination claims and seeking of contribution from potentially responsible parties. Defendants further submit that responsible parties are more likely to be held accountable if a statute of limitations is imposed because, as time passes, businesses may disappear or go bankrupt.

C.

Six groups of organizations and individuals were granted leave to appear as amici in this case. With the exception of the NJSBA,[4] each of the amici argues that the Appellate Division incorrectly held that a six-year statute of limitations applies to Spill Act contribution claims. The amici largely echo plaintiff's argument and offer further support for concluding

---

[4] While the NJSBA notes that "practitioners have long understood that New Jersey courts will not apply a statute of limitations to a claim for contribution under the Spill Act," it proceeds with its argument assuming the Court holds otherwise. NJSBA principally argues that any decision applying a statute of limitations should have prospective effect, and that the statute of limitations should not begin to run at the time of discovery. Because we find the statute of limitations inapplicable, we do not address those arguments.

16

that no statute of limitations applies to Spill Act claims. To the extent that the amici provide practical insight into the implications of imposing a statute of limitations on Spill Act contribution claims, we summarize their comments below.

Innocent Landowners outlines the steps taken during the remedial investigation phase of a site contamination, emphasizing the length of time the process may take. As such, Innocent Landowners argues that a filing limit will not accelerate remedial investigation. Innocent Landowners asserts that a six-year statute of limitations would subject innocent owners of contaminated property to de facto liability for cleanup costs and, correspondingly, permit dischargers of hazardous material to avoid liability. Finally, Innocent Landowners asserts that imposing a six-year limit will interpose tremendous turmoil into Spill Act contribution claims already filed in the trial courts.

DEP argues that applying a statute of limitations to Spill Act contribution claims frustrates its ability to achieve the Spill Act's purposes. Estimating that seventy-two percent of the sites currently in the Site Remediation Program are being remediated by private entities, DEP notes that the viability of private contribution actions is critical to remediation efforts. Moreover, DEP asserts that applying a statute of limitations impedes the ability to collect from those actually responsible,

17

undermining the legislative purpose of the Spill Act.  DEP also contends that the Appellate Division's opinion frustrates its ability to enforce the Spill Act by raising uncertainty as to what other defenses not explicitly provided by the statute may be added by the courts.

Municipal Amici advise that the Spill Act is an important tool used by New Jersey municipalities to obtain funds for remediating contaminated properties.  They assert that if the ability to bring contribution actions is limited, local taxpayers will bear a greater burden in the cleanup of polluted sites.  Municipal Amici also draw attention to the Industrial Site Recovery Act (ISRA), N.J.S.A. 13:1K-6 to -13.1, which provides that when a municipality cleans up a contaminated property acquired through foreclosure on a tax sale, "all expenditures incurred in the remediation shall be a debt of the immediate past owner or operator of the industrial establishment."  N.J.S.A. 13:1K-9.3.  ISRA contains no statute of limitations.  Noting that ISRA was passed the same year that the contribution provision was added to the Spill Act, Municipal Amici argue that it would be illogical for a municipality to be able to recover without a time limitation under ISRA, if a property was acquired through foreclosure pertaining to a certificate of tax sale, but not under the Spill Act, when a property was acquired through purchase or eminent domain.

18

Highlighting the volume of "Known Contaminated Sites" requiring remediation in New Jersey, Environmental Amici echo the argument that imposing a statute of limitations would undermine the Spill Act's purpose by limiting the ability of the party conducting a cleanup to seek contribution from those responsible for the pollution. Environmental Amici express concern about the impact that the Appellate Division's judgment, if affirmed, would have on the State's "ability to ensure that its citizens can drink clean water, take their children to chemical-free playgrounds and build their homes on uncontaminated land."

PRC argues that applying a statute of limitations to Spill Act claims will result in unnecessary litigation and will have a "chilling effect" on cooperation between potentially responsible parties. Such an effect, PRC asserts, would be a waste of judicial resources and would shift party resources away from the investigation and cleanup activities the Spill Act is designed to promote.

### III.

### A.

To provide context to our construction of the contribution provision, we begin with the Spill Act's basic liability structure. As originally enacted, the Spill Act scheme contemplated that most cleanup actions would be conducted by DEP

19

using monies from the Spill Fund where needed.  See L. 1976, c. 141, § 7 ("Whenever any hazardous substance is discharged, [DEP] shall act to remove or arrange for the removal of such discharge, unless it determines such removal will be done properly and expeditiously by the owner or operator of the major facility or any other source from which the discharge occurs.").  In addition, the original version of the Spill Act focused primarily on the claims for damages that could be brought against the Spill Fund and on the liability of dischargers for costs incurred by DEP.  See id. §§ 12-15 (describing procedures associated with claims for damages against Spill Fund); id. § 3(d) ("'Cleanup and removal costs' means all costs associated with a discharge incurred by the State or its political subdivisions or their agents or any person with written approval from [DEP] . . . .").

The Spill Act created the Spill Fund "to finance the prevention and cleanup of oil spills and hazardous-waste discharges and to compensate . . . people damaged by such discharges."  Buonviaggio, supra, 122 N.J. at 8; see L. 1976, c. 141.  The Spill Act scheme made "[t]he fund . . . strictly liable, without regard to fault, for all cleanup and removal costs and for all direct and indirect damages no matter by whom sustained."  L. 1976, c. 141, § 8(a).  Cleanup and removal costs were originally defined as

> all costs associated with a discharge incurred
> by the State or its political subdivisions or
> their agents or any person with written
> approval from [DEP] in the (1) removal or
> attempted removal of hazardous substances or,
> (2) taking of reasonable measures to prevent
> or mitigate damages to the public health,
> safety, or welfare.
>
> [Id. § 3(d).]

Damages were defined more broadly as including the cost to repair or replace damaged personal or real property, any lost income or loss of earning capacity due to property damage, any reduction in property value, the cost of restoring or replacing natural resources (if possible), the loss of tax revenue by State or local government, and the interest on loans obtained to ameliorate damage pending payment of the claim. Id. § 8(a)(1)-(5).

As initially established, under the liability section of the Spill Act, the Spill Fund could recover damages up to certain limits "without regard to fault" against owners and operators of major facilities or vessels, subject only "to the defenses enumerated in subsection [(d)] of this section." Id. § 8(b). If the discharge was the result of "gross negligence," "willful misconduct," or "a gross or willful violation of applicable safety, construction or operating standards or regulations," the owner or operator would "be liable [to the fund] for the full amount of such damages." Ibid.

21

The Spill Act further provided that "[d]amages which may be recovered from, or by, any other person shall be limited to those authorized by common or statutory law." Ibid. However, in contrast to that limitation on the recovery of damages, the Spill Act provided that "[a]ny person who has discharged a hazardous substance shall be strictly liable, without regard to fault, for all cleanup and removal costs." Id. § 8(c) (emphasis added). Available defenses were limited. Owners and operators of major facilities or vessels could only raise as defenses "[a]n act or omission caused solely by war, sabotage, governmental negligence, God, or a third party or a combination thereof." Id. § 8(d). "Any other person" could raise "any defense authorized by common or statutory law." Ibid.

In 1979, subsection (b) of the Spill Act's liability section was revised to provide that, if a discharge was the result of gross negligence or willful misconduct, or a gross or willful violation, "the owner or operator shall be liable, jointly and severally, for the full amount of such damages." L. 1979, c. 346, § 5(b) (emphasis added). Subsection (c) was revised to broaden the class of persons who could be held liable and to clarify that the liability was joint and several. Id. § 5(c). And, subsection (d) was revised to provide that

> [a]n act or omission caused solely by war, sabotage, or God, or a combination thereof, shall be the only defenses which may be raised

22

> by any owner or operator of a major facility or vessel responsible for a discharge in any action arising under the provisions of this act.
>
> [Id. § 5(d).]

The sentence in subsection (d) specifying that common law and statutory defenses are available to other persons was deleted in the 1979 amendments, although the reference to a similar limitation on the recovery of damages from such persons in subsection (b) was left untouched. The Sponsor's Statement to the bill described those amendments as follows:

> This section would be amended to specifically provide for joint and several liability of dischargers for cleanup and removal costs and for damages from spills of hazardous substances. This section also has been amended to remove the defenses to strict liability which exists under the present law.
>
> [Assemb. 3542 (Sponsor's Statement), 198th Leg. (1979).]

Further, in 1991, subsection (c) of the liability section was amended to read, in relevant part: "Any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred." L. 1991, c. 85, § 4 (emphasis added). None of the statements accompanying the bill discussed that particular amendment.

Thus, following those amendments, and at all times relevant

23

to this action, the liability section of the Spill Act has provided, in relevant part, as follows:

a. The fund shall be strictly liable, without regard to fault, for all cleanup and removal costs and for all direct and indirect damages no matter by whom sustained . . . .

b. The damages which may be recovered by the fund, without regard to fault, subject to the defenses enumerated in subsection d. of this section against the owner or operator of a major facility or vessel, shall not exceed $50,000,000.00 for each major facility or $1,200 per gross ton for each vessel, except that such maximum limitation shall not apply and the owner or operator shall be liable, jointly and severally, for the full amount of such damages if it can be shown that such discharge was the result of (1) gross negligence or willful misconduct, within the knowledge and privity of the owner, operator or person in charge, or (2) a gross or willful violation of applicable safety, construction or operating standards or regulations. Damages which may be recovered from, or by, any other person shall be limited to those authorized by common or statutory law.

c. (1) . . . [A]ny person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred. . . .

d. (1) In addition to those defenses provided in this subsection [for persons who purchased property after 1993 without knowledge of or responsibility for a prior discharge], an act or omission caused solely by war, sabotage, or God, or a combination thereof, shall be the only defenses which may be raised by any owner or operator of a major facility or vessel responsible for a discharge in any action arising under the provisions of this act.

24

[<u>N.J.S.A.</u> 58:10-23.11g.]

B.

As noted, when originally enacted, the Spill Act's scheme contemplated that most cleanup actions would be conducted by DEP, using monies from the Spill Fund where needed. See <u>L.</u> 1976, <u>c.</u> 141, § 7 ("Whenever [DEP] acts to remove a discharge or contracts to secure prospective removal services, it is authorized to draw upon the money available in the fund."). However, based on the Spill Act's development of joint and several strict liability, any responsible party, even if only partially responsible, can be required to pay the entire cost of the cleanup. <u>Magic Petroleum Corp.</u>, <u>supra</u>, 218 <u>N.J.</u> at 402. As a result, and as the parties in this matter underscore, remediation actions are now often undertaken by private parties acting through an agreement with DEP.[5] The prevalence of private party actions by remediating parties, which include demands for contribution by other responsible parties not subject to an agreement with the DEP, revealed to policy makers an ambiguity in the Spill Act. The Legislature recognized that, "[i]n the normal course of tort law, this person would have a right of

_____

[5] In 2009, the Legislature amended existing legislation governing remediation procedures, <u>L.</u> 2009, <u>c.</u> 60, to require remediation to proceed under the supervision of a licensed site remediation professional, without prior approval from DEP. <u>N.J.S.A.</u> 58:10B-1.3(a), (b).

25

contribution, the right to collect money from others jointly responsible for the costs." Assemb. 3659 (Sponsor's Statement), 204th Leg. (1991). However, the Spill Act had not set forth a contribution right. See ibid. Accordingly, the Legislature amended the Spill Act in 1991 expressly to "allow[] those parties who enter into an agreement with [DEP] to remove a hazardous discharge to seek contribution from those responsible parties who have not entered into such an agreement." Ibid. The contribution provision of the Spill Act, which has not been significantly modified since its enactment, currently provides as follows:

> Whenever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance. In an action for contribution, the contribution plaintiffs need prove only that a discharge occurred for which the contribution defendant or defendants are liable pursuant to [N.J.S.A. 58:10-23.11g(c)], and the contribution defendant shall have only the defenses to liability available to parties pursuant to [N.J.S.A. 58:10-23.11g(d)]. In resolving contribution claims, a court may allocate the costs of cleanup and removal among liable parties using such equitable factors as the court determines are appropriate.
>
> [N.J.S.A. 58:10-23.11f(a)(2)(a); see also L. 1991, c. 372, § 1 (enacting contribution provision).]

26

N.J.S.A. 58:10-23.11g(c), which is cross-referenced in this contribution provision, provides that "any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs," while N.J.S.A. 58:10-23.11g(d), which is also cross-referenced, provides that "an act or omission caused solely by war, sabotage, or God, or a combination thereof, shall be the only defenses which may be raised by any owner or operator of a major facility or vessel responsible for a discharge."[6]

IV.

Our task in this appeal involves construction of the Spill Act; specifically, whether a statute of limitations should apply to contribution claims authorized by the Spill Act. When construing a statutory provision, a court's role is to discern and give effect to the Legislature's intent. DiProspero v. Penn, 183 N.J. 477, 492 (2005). To do so, we focus on the plain language of the statute because it is "the best indicator" of the Legislature's intent. In re Plan for the Abolition of the

---

[6] For completeness we note that in 1993, after the contribution provision was enacted, the Legislature added subsection (d)(2), creating a specific new defense for innocent subsequent purchasers of property. N.J.S.A. 58:10-23.11g(d)(2); L. 1993, c. 139, § 44.

27

Council on Affordable Hous., 214 N.J. 444, 467 (2013). Statutory language should be interpreted in accordance with common sense in order to effectuate the legislative purpose. N.E.R.I. Corp. v. N.J. Highway Auth., 147 N.J. 223, 236 (1996). Further, when discerning legislative purpose and intent, the Court can consider the entire legislative scheme of which a particular provision is but a part. See Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 129 (1987). Here the Legislature expressly stated its intended general purposes upon enactment of the Spill Act. A central Spill Act purpose is "to provide liability for damage sustained within this State as a result of any discharge of [petroleum products and other hazardous] substances, by requiring the prompt containment and removal of such pollution and substances." N.J.S.A. 58:10-23.11a.

By its terms, the Spill Act provides a right of contribution for "dischargers or persons [who] clean[] up and remove[] a discharge of a hazardous substance" against "all other dischargers and persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal." N.J.S.A. 58:10-23.11f(a)(2)(a). Neither this provision, nor any other provision in the Spill Act, sets forth a statute of limitations applicable to such contribution actions or states that a statute

28

of limitations is not applicable.[7]

None of the parties contest that, if a statute of limitations provision is applicable to Spill Act claims, then N.J.S.A. 2A:14-1 would provide the appropriate statute of limitations; we agree with that assessment. However, the question remains what import to give to the Legislature's silence as to whether a statute of limitations was intended to be applicable at all.

Here, while the contribution provision does not explicitly state that no statute of limitations applies, it does state that "[a] contribution defendant shall have only the defenses to liability available to parties pursuant to [N.J.S.A. 58:10-23.11g(d)]." N.J.S.A. 58:10-23.11f(a)(2)(a) (emphasis added). The language of the statute expressly restricting the defenses available under the Spill Act provides significant support for a conclusion that no statute of limitations applies.

_____

[7] In this regard, the Spill Act differs markedly from CERCLA, which explicitly contains a statute of limitations applicable to contribution claims. 42 U.S.C.A. § 9613(g)(3); see also N.J. Dep't of Envtl. Prot. v. Dimant, 212 N.J. 153, 178-80 (2012) (noting several differences between Spill Act and CERCLA). Notably, as originally enacted, CERCLA did not contain a statute of limitations; however, in 1986, CERCLA was amended to add both a contribution action and a corresponding statute of limitations. Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, § 113, 100 Stat. 1613. Although the Spill Act was amended in 1991 to add the contribution provision, the Legislature did not add the corresponding statute of limitations. L. 1991, c. 372.

29

The Spill Act's incorporation of the defenses enumerated in N.J.S.A. 58:10-23.11g(d) limits defendants to the following defenses:  "an act or omission caused solely by war, sabotage, or God, or a combination thereof."  That list does not include a statute of limitations defense.

Although, as defendants argue, past case law does provide some basis to argue for the application of a default statute of limitations when a statute is silent on such defenses, see, e.g., Montells, supra, 133 N.J. 282, here the Spill Act is not silent.  The Spill Act enumerates the only defenses specified as available to contribution defendants and a statute of limitations defense is not included.  Thus, this matter is unlike Montells, supra, because the Legislature here made an effort to set forth the defenses that would provide relief from contribution liability.[8]  While an express prohibition against application of the statute of limitations set forth in N.J.S.A. 2A:14-1 would have made the contribution provision explicitly clear, the legislative choice to proceed by listing the defenses that would be permitted provides insight into legislative intent.

_____

[8] In light of our rejection of Montells's applicability in our analysis, we find it unnecessary to further discuss federal case law that relied on Montells when determining to apply a statute of limitations to Spill Act claims.  See, e.g., New W. Urban Renewal Co. v. Westinghouse Elec. Corp., 909 F. Supp. 219, 228 (D.N.J. 1995).

Moreover, we agree with plaintiff and amici that the Legislature's reference to the subsection (d) defenses reveals an intent to incorporate the substantive defenses listed, without regard to the individual that the section dictates can assert the defense. The argument is logical and remains true to the plain language of the statute. The contribution provision refers to the "defenses" available in subsection (d), and the defenses enumerated in subsection (d) are independent of the individuals authorized by that subsection to assert them. Significantly, we reject defendants' argument that a reading of the contribution provision that excludes all other defenses deprives a defendant of other unlisted defenses that should presumably be maintained, such as challenges to venue, service of process, and subject matter jurisdiction. Such defenses are established by court rules under the jurisdiction of the Supreme Court and are not subject to overriding legislation. Statutes of limitations, by contrast, are a product of the Legislature. See State v. Short, 131 N.J. 47, 55 (1993) (noting that once Legislature creates statute of limitations, "that statute bec[o]me[s] binding on the courts").

In sum, the plain text supports that the Legislature intended to include no statute of limitations defense for contribution defendants. A common-sense reading of the plain language chosen by the Legislature supports that construction.

The "only defenses" available to contribution claims were to be the ones to which the Legislature specifically referred.

Furthermore, the construction we adopt supports the longstanding view, expressed by the Legislature and adhered to by the courts, that the Spill Act is remedial legislation designed to cast a wide net over those responsible for hazardous substances and their discharge on the land and waters of this state.  See Pitney Bowes, supra, 277 N.J. Super. at 490 (noting that Spill Act's "broad imposition of strict liability excepts no one actually responsible for that environmental contamination"); see generally State, Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 493 (1983) ("Those who poison the land must pay for its cure.").  The Legislature could not have intended to permit its imposition of contribution liability on culpable dischargers to be frustrated by the imposition of a general and prior enacted, but unreferenced, statute of limitations.[9]  Where the Legislature intended to include a statute of limitations within the Spill Act, it has said so. See, e.g., N.J.S.A. 58:10-23.11k.  Accordingly, we will not add to its list of identified defenses based on an inference from its silence about statutes of limitations specifically.

---

[9] In fact, plaintiff and amici point to serious practical consequences that would undermine the legislative objective to apply strict liability to all responsible parties due to the often difficult task of identifying all of those parties.

32

Although we do not find the language of the statute to be ambiguous, we note for completeness that the legislative history supports our construction. When "the plain language of a statute is ambiguous or open to more than one plausible meaning," the Court may look to extrinsic evidence such as legislative history in determining legislative intent. State v. Marquez, 202 N.J. 485, 500 (2010); Marino v. Marino, 200 N.J. 315, 329 (2009). Most notably, in amending the Spill Act in 1979, the Legislature deleted the aspect of subsection (d) of the liability section providing that persons, other than owners or operators of major facilities or vessels, "shall have available to him any defense authorized by common or statutory law." L. 1979, c. 346, § 5(d). The Sponsor's Statement accompanying that amendment stated that "[t]his section . . . has been amended to remove the defenses to strict liability which exist[] under the present law," Assemb. 3542 (Sponsor's Statement), 198th Leg. (1979), evidencing a specific legislative intent to eliminate other otherwise available defenses.

Our role is simply to discern as best we can legislative intent and to implement that intent. We do so here by giving effect to the words of the Legislature. In doing so, we do not unsettle a decades-long understanding in this State that no limitations period restricts contribution claims against responsible parties. See Pitney Bowes, supra, 277 N.J. Super.

33

at 487-90.  To a certain extent, legislative acquiescence in the approach historically taken by the courts of this state figures into our consideration.  If the Legislature intended something other than what we perceive to be a broad approach to holding parties responsible for their role in polluting the land and waters of New Jersey, then legislative correction can fix any interpretive misunderstanding.  However, but for such correction, we see no reason to interpose in these factually complex cases a new requirement to determine when one knew of a discharge in order to afford the remediating party the contribution right that the Spill Act confers as against all other responsible parties.  We decline to handicap the Spill Act's intentionally broad effect in such manner.  We add only that our holding does not negatively affect responsible parties under the Spill Act any more than the Act already has by virtue of its imposition of contribution liability.

V.

The judgment of the Appellate Division is reversed and the matter remanded for consideration of the unaddressed issues raised on appeal.

CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion.

34

SUPREME COURT OF NEW JERSEY

NO. __A-38__                           SEPTEMBER TERM 2013

ON CERTIFICATION TO _____Appellate Division, Superior Court_____


MORRISTOWN ASSOCIATES,

      Plaintiff-Appellant,

          v.

GRANT OIL COMPANY, ABLE
ENERGY, PARSIPPANY FULE OIL,
EDWARD HIS and AMY HIS and
SPARTAN OIL COMPANY,

      Defendants-Respondents.


DECIDED _____January 26, 2014_____
        ____Chief Justice Rabner_____ PRESIDING
OPINION BY _____Justice LaVecchia_____
CONCURRING/DISSENTING OPINIONS BY _____
DISSENTING OPINION BY _____

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |